UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANGELA ELLISON, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:05-CV-1155-G |
| FANNIE MAE, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiffs Angela Ellison ("Ellison"), Irma Llaguno ("Llaguno"), Rowena Iris ("Iris"), Aida Ortiz ("Ortiz"), and Ellise Bailey-Sahal ("Bailey-Sahal") (collectively, "the plaintiffs") to reopen the case. For the reasons stated herein, the motion is denied and the case is remanded to arbitration.

I. BACKGROUND

This motion stems from a prior order of this court administratively closing the case pending arbitration between the parties pursuant to a written dispute resolution policy. *See* Order, Feb. 7, 2006. Under the terms of that order, the plaintiffs now seek to have the case reopened to pursue their claims in this court. *See* Plaintiffs'

Memorandum in Support of Their Motion to Reopen the Case ("Motion to Reopen")
at 1.

Previously, the court granted the defendant Fannie Mae's motion to compel
arbitration. *See* Order, Nov. 29, 2005. As employees of the defendant, the parties
entered into a dispute resolution policy calling for a form of non-binding arbitration.
While arbitration is mandatory under the dispute resolution policy, the employee is
given the option to reject any arbitration award. *See* Dispute Resolution Policy
("Policy") at 1, 5, *attached to* Appendix to Defendant Fannie Mae's Response to
Plaintiff's Motion to Reopen Case. The dispute resolution policy reads:

> 14. <u>Rejection/Acceptance of the Award</u>. The employee
> may, *within 30 calendar days of the date of issuance of the
> Award*, reject it, in its entirety, by sending a completed
> "Rejection of Arbitration Award" form to JAMS and the
> OCJ. If the employee rejects the Award, it will not become
> binding on the employee or the Company, and the
> employee may bring suit on the claim at his or her own
> expense.
>
> If the employee does not reject the Award during the 30-
> day period, the Award becomes binding on both the
> Company and the employee, and the employee may not
> bring suit against Fannie Mae . . . on any claims arising out
> of the same facts or circumstances that were raised,
> presented, or decided in the arbitration. Policy at 5
> (emphasis in original).

On November 2, 2006, the arbitrator issued an award in Llaguno's arbitration;
she did not submit her rejection form until March 13, 2007. *See* Defendant Fannie
Mae's Response to Plaintiff's Motion to Reopen Case ("Response") at 3. Though her

rejection form was untimely, Llaguno did file a motion to reopen the case with this court on December 1, 2006. *See* Plaintiff's Reply in Support of Their Motion to Reopen the Case ("Reply") at 1; Docket Sheet. The award in the Iris arbitration was issued on November 30, 2006; her rejection form was not submitted until March 13, 2007. *See* Response at 3. According to Iris, she informed Fannie Mae verbally through her counsel of her intent to reject the arbitration award during the arbitration. *See* Declaration of Timothy B. Fleming at App. 25, *attached to* Appendix to Plaintiffs' Reply in Support of Their Motion to Reopen the Case ("Plaintiff's Appendix"). An award was issued in Ortiz's arbitration on January 9, 2007; her rejection form was also sent on March 13, 2007. *See* Response at 3. While the rejection was not submitted until mid-March, the record indicates that on January 29, 2007, Ortiz, through her counsel, sent a letter to defense counsel indicating that Ortiz "intends to exercise" her right to reject the award and to proceed with litigation. *See* Letter from Timothy Fleming & Keir Bickerstaffe to Angelina LaPenotiere (Jan. 29, 2007), *attached to* Plaintiff's Appendix at App. 5. Bailey-Sahal abandoned her claims and never proceeded to arbitration. *See* Response at 2.

Finally, award was issued in the Ellison arbitration on February 23, 2007; her rejection form was sent on March 19, 2007. See *id.* at 3. According to the defendant, Ellison was not present during the arbitration of her claims, though she

- 3 -

did speak with the arbitrator via telephone during the arbitration and her counsel was present at the arbitration.  See *id.* at 5-6.

The dispute resolution policy contains a provision regarding the scope of the arbitrator's authority.  It reads:

> 16.  Interpretation and Governing Law.  The arbitrator will resolve all disputes over the interpretation and applicability of the Policy, and over the arbitrability of all matters presented under it.  This Policy is an agreement to arbitrate pursuant to the FAA.  The Policy will, in all respects, be interpreted, enforced, and governed under the FAA.

Policy at 6.

## II. ANALYSIS

In the instant motion, the plaintiffs argue that the underlying case should be reopened to allow the plaintiffs to proceed in the prosecution of their claims.[1]  Fannie Mae asserts three objections to the motion.  First, it argues that the court should not reopen the case as it pertains to Bailey-Sahal because her failure to pursue her claims in arbitration restricts her ability to have the case reopened.  Response at 2.  Second, as to Ellison, the defendant avers that her absence from the arbitration hearing is tantamount to her failing to arbitrate and thus she too should be precluded from having her case reopened.  *Id*. at 3-6.  Finally, as to the remaining plaintiffs, Llaguno,

---

[1]      All of the plaintiffs, with the exception of Bailey-Sahal, wish to pursue their claims through litigation.  Bailey-Sahal argues that the case should be reopened as to her only to the extent that she will file for a notice of voluntary dismissal under Fed. R. Civ. P. 41(a)(1).  *See* Motion to Reopen at 1-2.

Iris, and Ortiz, Fannie Mae argues that their motion to reopen the case is barred due to their failure to timely submit their rejection forms. *Id*. at 2.

There are thus two questions for consideration: (1) for Llaguno, Iris, and Ortiz, whether the actions of these three plaintiffs following the issuance of an award were sufficient to satisfy the requirements of section 14 of the dispute resolution policy; and (2) for Ellison, whether her level of participation during arbitration was sufficient to satisfy her duty to arbitrate. However, the more immediate issue for the court to determine is who should resolve these issues -- the court or the arbitrator.

Under the dispute resolution policy, specific procedures exist for an employee to vindicate her claims through litigation. First, the employee must submit to arbitration. Second, if the employee is dissatisfied with her arbitration award, she must reject the award within thirty days of its issuance. The dispute resolution policy outlines the procedures for making such a rejection and the consequences of failing to reject the award. The plaintiffs contend that these issues should be resolved by the arbitrator.[2] *See* Reply at 1.

## A.  Applicable Law

In considering whether a dispute is subject to arbitration, the first step a court must take "is to determine whether the parties agreed to arbitrate that dispute."

---

[2]      The plaintiffs, however, attempt to place the burden on the defendant and allege that Fannie Mae's failure to have the arbitrator rule on these procedural requirements earlier amounts to a waiver of such prerequisites. *See* Reply at 1.

*Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626

(1985).  In general, this determination is made by "applying the federal substantive

law of arbitrability, applicable to any arbitration agreement within the coverage of the

[Federal Arbitration] Act."  *Id.* (quoting *Moses H. Cone Memorial Hospital v. Mercury*

*Construction Corporation*, 460 U.S. 1, 24 (1983)) (internal citations omitted).  Here,

the court sees no reason not to apply federal law in its analysis of whether the instant

disputes are subject to arbitration.  Neither party has argued that the Federal

Arbitration Act ("FAA") does not apply to this dispute, and the case appears to come

within the FAA's purview.[3]  *See* 9 U.S.C. § 1 *et seq.*  However, the FAA is not an

independent source of federal jurisdiction and the party seeking relief under the FAA

must demonstrate the existence of federal question or diversity jurisdiction.  *Rio*

*Grande Underwriters, Inc. v. Pitts Farms, Inc.*, 276 F.3d 683, 685 (5th Cir. 2001).  In

this case, because the underlying claims involve a question of federal law, this court

has jurisdiction.  *See* 28 U.S.C. §1331.

Federal law strongly favors arbitration.  *Mastrobuono v. Shearson Lehman Hutton,*

*Inc.*, 514 U.S. 52, 56 (1995) (the FAA "declared a national policy favoring

arbitration.") (quoting *Southland Corporation v. Keating*, 465 U.S. 1, 10 (1984)); *Moses*

*H. Cone Memorial Hospital*, 460 U.S. at 24-25 ("The Arbitration Act establishes that,

as a matter of federal law, any doubts concerning the scope of arbitrable issues should

---

[3]      Additionally, the terms of section 16 call for arbitration pursuant to the
FAA.  *See* Policy at 6.

- 6 -

be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). Consequently, the FAA, by its terms, "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

To decide whether parties should be compelled to arbitrate their dispute, the Fifth Circuit has developed a two-prong inquiry. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46 (5th Cir. 2001). The first prong requires the court to determine whether "the parties agreed to arbitrate their dispute." *Id.* at 445. Two considerations guide the court in making this determination: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the dispute in question is within the scope of the arbitration agreement. *Id.* Under the second prong, the court must ensure that no legal restraints external to the agreement have foreclosed arbitration. *Id.* at 446. If the court finds that this two-prong inquiry is satisfied, arbitration is mandatory. *Mitsubishi Motors*, 473 U.S. at 628.

There is no question in this case that the parties entered into a valid agreement to arbitrate. Thus, the court must determine whether the scope of the arbitration

policy is broad enough to encompass questions regarding whether the procedural requirements necessary to reject the arbitration award have been met.

### B.   Scope of the Dispute Resolution Policy

The court notes, in beginning the analysis, that "when the scope of an arbitration agreement is reasonably in doubt, it should be construed in favor of arbitration." *Coffman v. Provost Umphrey Law Firm, L.L.P.*, 161 F. Supp. 2d 720, 724-25 (E.D. Tex. 2001) (citing *Mar-Len of Louisiana, Inc. v. Parsons-Gilbane*, 773 F.2d 633, 635 (5th Cir. 1985)), *aff'd*, 33 Fed. Appx. 705 (5th Cir.), *cert. denied*, 537 U.S. 880 (2002). The scope of arbitration is not limited to the substantive claims brought under its terms but can include procedural questions as well. See *McKee v. Home Buyers Warranty Corporation II*, 45 F.3d 981, 985 (5th Cir. 1995) ("We think that this 'federal policy favoring arbitration' covers more than simply the substantive scope of the arbitration clause -- *i.e.*, whether the [plaintiffs'] claims were properly submitted to arbitration").

The language of the dispute resolution policy controls the outcome of this motion to reopen the case. Both of the questions presented on this motion -- whether Llaguno, Iris, and Ortiz satisfied the rejection provision and whether Ellison sufficiently participated in her arbitration -- are "disputes over the interpretation and applicability of the [dispute resolution policy]." Accordingly, the court remands both issues to the arbitrator for a determination of whether these plaintiffs have satisfied

- 8 -

the requirements of the arbitration policy necessary to pursue their claims through litigation.

### III. CONCLUSION

For the reasons stated above, the plaintiffs' motion to reopen the case is **DENIED** as to all plaintiffs except Bailey-Sahal.  As to Bailey-Sahal, the case is **REOPENED** for the limited purpose of allowing her to file a notice of voluntary dismissal of her claims.  The issue of whether the remaining plaintiffs (Ellison, Llaguno, Iris, and Ortiz) may proceed to litigate their substantive claims in federal court is **REMANDED** for determination by the arbitrator.

**SO ORDERED**.

July 23, 2007.

A. JOE FISH
CHIEF JUDGE